MICHEL, Circuit Judge.
Captain Richard A. Banks (Banks), U.S. Navy Reserve, appeals the judgment of the United States District Court for the Eastern District of Virginia, Civil No. 86-0923-A, based on separate orders dismissing Appellant’s (1) Little Tucker Act claim (Oct. 27,1988), (2) first amendment claim (Feb. 1, 1989), and (3) Privacy Act claim (July 29, 1988), all the claims in his complaint. Because we hold that Banks’ transfer to a nonpay Navy Reserve position pursuant to a Navy regulation was lawful, his underlying claim for back pay due the incumbent of his former position fails, and therefore we affirm.
BACKGROUND
Banks was appointed Commander of the Naval Reserve VFA-303 squadron in July of 1983. His squadron was designated the first Naval Reserve Aviation Squadron to receive the new F/A-18 Hornet aircraft. Banks v. Ball, 705 F.Supp. 282, 283 (E.D.Va.1989). By December of 1983 Banks heard rumors that the scheduled delivery of the Hornet was to be cancelled. Id. at 283. That month he wrote an official letter *1086 to the Secretary of the Navy, via his chain of command, expressing his concerns. Id. at 283. He also discussed the matter with the Commander of the Naval Reserve Forces, Rear Admiral T.F. Rinard (Rinard), who confirmed there were uncertainties as to when the VFA-303 would be receiving the Hornets. Banks discussed with Rinard the idea of Banks writing to members of Congress. Rinard informed Banks that he could either write as a private citizen or use a procedure whereby he could write in his official capacity but only with prior approval of the Secretary of the Navy. Rinard specifically counseled him against writing in his official capacity. Id. at 283.
The district court found: Banks drafted a letter dated January 6, 1984, to members of Congress. Military personnel of the VFA-303 squadron prepared copies of the letter for members of the House of Representatives and Senate Armed Services committees. Banks authorized a subordinate officer in the squadron to sign Banks’ name to the letters and to mail them. Id. The letters were on official Navy letterhead and stated, in part: “As the Commanding Officer of Strike Fighter Squadron THREE ZERO THREE I would like to draw your attention to the possibility that the current planned transition of this command to the F/A-18 aircraft is in jeopardy.” Id. at 284. In the letter Banks included his home and office phone numbers and signed the letter as “R.A. Banks, Commanding Officer.” Id. He also volunteered to visit members of Congress in Washington if needed. Id.
Congressman William Whitehurst of Virginia received one of the letters and notified the Secretary of the Navy. Rinard learned of the letter writing, saw a copy of the text, and determined the letter violated Article 1149 of the Navy Regulations. Id. Article 1149 bars “any person in the naval service” from communicating to Congress in his official capacity without the consent of the Secretary of the Navy. Navy Regs., art. 1149 (1973).
In March of 1984, Rinard initiated an adverse fitness report on Banks. He also issued orders transferring Banks to a voluntary training unit in Alameda, California, due to violation of Article 1149. Id. at 284. In January of 1986 the adverse fitness report was removed from Banks’ records, id. at 284-85, but Banks remained in the voluntary training unit that was a nonpaying billet.
On January 22, 1986, Banks brought suit in district court challenging his reassignment. Proceedings were stayed, however, while Banks sought relief from the Board for Correction of Naval Records. The Board denied Banks relief and he then pursued his remedy in the district court. The government filed a motion to dismiss the complaint and the court heard argument on the motion. On July 29, 1988, the court ordered dismissal of Banks’ Privacy Act claim. Three months later the government renewed its motion to dismiss and on October 27,1988, the court ordered dismissal of Banks’ Little Tucker Act claim. The first amendment claim was tried on December 21, 1988. In-court testimony was given by Banks and Rinard and deposition testimony by the former Secretary of the Navy (Lehman) was offered into evidence. On February 1, 1989, the district court ordered the dismissal of the first amendment claim. Judgment was entered and this appeal followed.
ISSUE
Whether Banks’ violation of Navy Regulation 1149 supports transfer to a nonpay position without offending the first amendment.
OPINION
Appellant asserts this court has jurisdiction under 28 U.S.C. § 1295(a)(2) (1982). We do have exclusive jurisdiction over “an appeal from a final decision of a district court of the United States ... if the jurisdiction of that court was based, in whole or in part, on [28 U.S.C.] section 1346 [with exceptions not pertinent here, e.g., a tax claim].” Id. Section 1346(a)(2), part of what is commonly known as the Little Tucker Act, provides “district courts shall have original jurisdiction ... of [any non-tort] civil action or claim against the United *1087 States, not exceeding $10,000____” Appellant asserted a nontort claim against the United States not exceeding $10,000 and therefore the District Court for the Eastern District of Virginia had original subject matter jurisdiction. Consequently, we have jurisdiction under 28 U.S.C. § 1295(a)(2) to hear this appeal.
I. The Little Tucker Act Claim
Banks has stated a claim under the Little Tucker Act sufficient to avoid dismissal only if he has demonstrated a substantive right, independent of the Act, to payment of money by the United States because the Act itself does not create a cause of action but merely waives sovereign immunity (and grants jurisdiction to the district courts or the Claims Court, depending on the amount of damages). See United States v. Testan, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976).
Appellant claims he is due back pay under 37 U.S.C. §§ 204(a) and 206(a) (1982). Neither section, however, establishes his right to payment. Section 204(a)(1) provides for payment to “a member of a uniformed service who is on active duty.” Regulations define “active duty” as “[fjull-time duty in a U.S. Military Service.” 32 C.F.R. § 102.3 (1989). Banks was not on full-time duty following his transfer, the only time period at issue in this appeal. Section 204(a)(2) provides for payment to “a member of a uniformed service [not a Reserve of the Army or Air Force] who is participating in full-time training ... or other full-time duty____” Banks did not so participate and therefore is not entitled to payment under this subsection either. Cf. Ayala v. United States, 16 Cl.Ct. 1, 4 (1988) (“[A] reservist is not entitled to compensation ... unless he is ordered to perform and actually performs the work. Compensation is not based on status as a reservist.” (citing United States v. Wick-ersham, 201 U.S. 390, 26 S.Ct. 469, 50 L.Ed. 798 (1906))).
Nor does the remaining statutory provision Banks relies upon require the payment of money to Banks. Section 206(a) provides:
Under regulations prescribed by the Secretary ... a member of a reserve component of a uniformed service who is not entitled to basic pay under section 204 of this title, is entitled to compensation ... for each regular period of instruction, or period of appropriate duty, at which he is engaged for at least two hours____
This provision allows for payments to reservists for inactive duty training, as prescribed by regulation. Banks, however, was transferred to a “voluntary training unit.” Banks, at 284. Defense Department regulations provide that a voluntary training unit is one “formed by volunteers to provide [Reserve Component] training in a nonpay status for [Individual Ready Reserve] and active status Standby Reservists ... participating in such units for retirement points.” 32 C.F.R. § 102.3 (1989) (emphasis added). After Banks was transferred to the Voluntary Training Unit he performed no reserve unit drills for pay, by application of this regulation. Thus he was not entitled to payment following his transfer.
Upon analysis, Appellant has not demonstrated a substantive right to payment by the United States separate from 28 U.S.C. § 1346(a)(2); therefore, the district court properly dismissed his Little Tucker Act claim. Although the court stated the dismissal was “for lack of jurisdiction,” we think it clear that the district court concluded Banks failed to state a claim upon which relief could be granted. See Fed.R.Civ.P. 12(b)(6). Thus, the court’s dismissal was effectively an adjudication on the merits.
II. The First Amendment and Privacy Act Claims
Appellant also alleged violations of his first amendment[1] and Privacy Act *1088 rights that, he asserted, entitle him to reinstatement to his former, paying position. The district court dismissed these claims as well, in orders dated, respectively, February 1, 1989, and July 29, 1988. Our review of Appellant’s first amendment and Privacy Act claims is required under United States v. Hohri, 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987), in which the Supreme Court stated that a “mixed case presenting both a nontax Little Tucker Act claim and [a claim not within the Federal Circuit’s exclusive jurisdiction], may be appealed only to the Federal Circuit.” Id. at 75-76, 107 S.Ct. at 2253. Clearly, that means that our court is also to decide the non-Tucker Act claims in “mixed” cases. Accordingly, when a mixed case is presented and the nontax Little Tucker Act claim is dismissed, the other claims may be reviewed provided the Little Tucker Act claim was nonfrivolous. See Ralston Steel Corp. v. United States, 340 F.2d 663, 667, 169 Ct.Cl. 119 cert. denied, 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723 (1965) (Jurisdiction is appropriate if a claim “is not frivolous but arguable.”). Banks’ Little Tucker Act claim was nonfrivolous.[2] Although not generally subject to judicial review, military transfers that violate the first amendment are reviewable by this court. See Woodward v. United States, 871 F.2d 1068, 1072 (Fed.Cir.1989) (“[Employment actions claimed to be based on constitutionally infirm grounds are ... subject to judicial review.”); see also Brown v. Glines, 444 U.S. 348, 351-53, 100 S.Ct. 594, 597-99, 62 L.Ed.2d 540 (1980) (Removal of Air Force Captain raised first amendment claim subject to review).
To prevail on appeal from dismissal of both his first amendment and Privacy Act claims, Appellant must show his first amendment rights have been violated. To do so, he could demonstrate, from the record evidence, that he did not violate Article 1149 of the Navy Regulations which states: “No person in the naval service shall, in his official capacity, apply to the Congress or to either house thereof, or to any committee thereof, for ... Congressional action of any kind except with the consent and knowledge of the Secretary of the Navy.” Navy Regs., art. 1149 (1973). Thus, Banks would need to show either he acted not in his official capacity but as a private citizen, or he was not a “person in the naval service.”
That Captain Banks did act in his official capacity, however, is patently clear. The trial court found that Appellant “used official Navy letterhead, wrote his letter as the Commander [of the squadron], and signed the letter in his official capacity as Commander.” Id. at 286; see Joint App. 121-22, Banks v. Garrett, No. 89-1485 (Fed.Cir. filed Jan. 4, 1990) (letter). It therefore found he acted in his official capacity. Banks, at 288. We cannot disagree. Certainly, such a finding is not clearly erroneous. As to Appellant not being a “person in the naval service,” Banks has shown no authority for construing that phrase so as to exclude reserve officers in reserve units.
Because Banks did act in his official Navy capacity, he must demonstrate that the Regulation is unconstitutional by establishing that his action was protected by the first amendment and that his first amendment speech interests outweigh the government’s countervailing interests in uniformity, esprit de corps, and discipline. See *1089 Connick v. Myers, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983). Banks, however, makes little showing as to his particular interests under the circumstances of this case. Therefore, Banks effectively asks us to hold Article 1149 itself unconstitutional as violative of the first amendment. This we decline to do as the provision clearly passes constitutional muster.
As the Supreme Court stated, “[Rjeview of military regulations challenged on First Amendment grounds is far more deferential than constitutional review of similar laws or regulations [because] to accomplish its mission the military must foster instinctive obedience, unity, commitment, and esprit de corps.” Goldman v. Weinberger, 475 U.S. 503, 507, 106 S.Ct. 1310, 1313, 89 L.Ed.2d 478 (1986).
Article 1149 restricts communicating with Congress in an official capacity, absent the consent of the Secretary of the Navy.[3] The government’s interest in naval esprit de corps and discipline, as well as a uniform voice for the Department of the Navy, is an interest important to national security that outweighs Banks’ private interest in communicating, directly and without approval, with Congress in his official capacity. Cf. Connick, 461 U.S. at 142, 103 S.Ct. at 1687; Mings v. Department of Justice, 813 F.2d 384, 389 (Fed.Cir.1987).
Moreover, Banks has an adequate alternative avenue to communicate with Congress. A corollary provision, Article 1148, read in conjunction with Article 1149, unconditionally permits an officer to write Congress in his private capacity. It provides: “No person may restrict any member of an armed force in communicating with a member of Congress, unless the communication is unlawful or violates a regulation necessary to the security of the United States.” Navy Regs., art. 1148 (1973). Article 1149 is “a regulation necessary to the security of the United States.”
We therefore conclude the trial court properly balanced the first amendment interest of Banks, as a public employee, against the government employer’s interest, and correctly held that the Naval regulations “are valid and not a violation of the First Amendment.” Banks, at 287. Thus, the first amendment claim and the wholly derivative Privacy Act claim were properly dismissed.[4] See Boyd v. Secretary of Navy, 709 F.2d 684, 687 (11th Cir.1983), cert. denied, 464 U.S. 1043, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984) (The Privacy Act, 5 U.S.C. § 552a(e)(7), is not violated unless a document “implicate^] an individual’s first amendment rights.”).
We have also considered Appellant’s additional arguments relating to the first amendment and Privacy Act claims and determine that they neither have merit nor merit discussion. Therefore, the judgment of the district court is
AFFIRMED.

. In 1988 Congress amended 10 U.S.C. § 1034, providing, in part:
"No person may restrict a member of the armed forces in communicating with a Member of Congress or an Inspector General [provided the communication is not unlawful].” It prohibits the taking of retaliatory personnel action for such communication. The statute is not retroactive; it only applies to personnel action on or after the date of enactment, September 29, 1988.. *1088 Thus the new provision is not applicable to this appeal, and we intimate no disposition whether Article 1149 is invalid under section 1034, as amended. That issue is for another day.

. This court has previously been presented with similar appeals involving mixed claims. In one, we dismissed all of the claims for lack of jurisdiction. See Guercio v. Brody, 884 F.2d 1372, 1374 (Fed.Cir.1989) ("[T]he district court did not have jurisdiction over a claim satisfying the requirements of the Little Tucker Act, and for that reason we are without jurisdiction to hear this appeal.") In Guercio, we must presume, the Little Tucker Act claim was seen as frivolous, thus making dismissal for lack of jurisdiction proper. Here, by contrast, neither the district court nor this court viewed the Little Tucker Act claim as frivolous. Banks cited statutes that at least appeared to mandate payment of money to reservists performing drills. Thus, this case compares, not with Guercio, but with Hohri v. United States, 847 F.2d 779 (Fed.Cir.1988) (on remand), where our court took jurisdiction and found the Little Tucker Act claim dismissible but, inferentially, nonfrivolous.

. That Banks wrote without the Secretary’s consent is undisputed.

. Banks argues that the Navy, because of its investigation of his violation of Article 1149 and related matters, kept a file on him that violates the Privacy Act.